

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

NETWORK-1 SECURITY SOLUTIONS, §
INC. §
§
§
Plaintiff, §
§ CASE NO. 6:05-CV-291
vs. §
§
D-LINK CORPORATION AND D-LINK §
SYSTEMS, INC., §
§
Defendants. §

## MEMORANDUM OPINION

After thoroughly considering the parties' written submissions and hearing oral arguments at the February 7, 2006 scheduling conference and motion hearing, the Court denied from the bench D-Link's motions to transfer venue to the Southern District of New York. This Memorandum Opinion explains the Court's reasons for its ruling.

## BACKGROUND

Network-1 Security Solutions, Inc. brought this patent-infringement action against D-Link Corporation and D-Link Systems, Inc. (collectively "D-Link") on August 10, 2005. Network-1 is a Delaware corporation and maintains its principal place of business in New York. D-Link Corporation is a Taiwanese company, and its headquarters are in Taipei, Taiwan. D-Link Systems is incorporated in and maintains its principal place of business in California. Network-1 alleges D-Link infringes U.S. Patent No. 6,218,930, "Apparatus And Method For Remotely Powering Equipment Over A 10/100 Switched Ethernet Network."

1

On March 31, 2004, PowerDsine,[1] an unrelated company, sued Network-1 in the Southern District of New York seeking a declaratory judgment that its chips do not infringe Network-1's '930 patent. PowerDsine supplies a chip D-Link uses in some of D-Link's accused products. D-Link moved the Judicial Panel on Multidistrict Litigation ("JPML") to consolidate the two actions. D-Link moved this Court to stay this litigation pending the JPML's decision, to dismiss the case against D-Link Corporation for insufficiency of service, and to transfer this case to the Southern District of New York. On November 3, 2005, this Court granted D-Link's motion to stay this case pending the JPML's decision. However, on December 1, 2005, the JPML issued an order deeming the motion to transfer moot because the *PowerDsine* action had settled and been dismissed, and this Court accordingly lifted its stay on December 9, 2005.

Network-1 attempted to serve D-Link Corporation three times. After each attempt, D-Link Corporation filed a motion to dismiss for insufficient service of process or, alternatively, to transfer venue to the Southern District of New York. D-Link Systems joined in the motions to transfer. During the February 7, 2006 hearing, D-Link Corporation stated that it would have been willing to waive service under Federal Rule of Civil Procedure 4, but Network-1 had never asked it to waive service. Network-1 stated that when it asked Mr. Palmatier if D-Link Corporation would waive service, he responded that he did not represent D-Link Corporation. The Court then asked Network-1 if it would like to ask Mr. Palmatier if D-Link would waive service, which Network-1 then did. Mr. Palmatier agreed on D-Link's behalf to waive service, as provided in Rule 4, but insisted that it still receive an additional 90 days to answer. Network-1 had first attempted to serve D-Link over

---

[1] PowerDsine is a wholly owned subsidiary of an Israeli corporation. PowerDsine's United States headquarters is in New York.

four months earlier and objected to another 90 day delay. Rather than prolong the case further, the Court denied D-Link Corporation's motions to dismiss for insufficiency of process and ordered Network-1 to effect service of process on D-Link Corporations's counsel of record, Mr. Palmatier, thus requiring D-Link Corporation to answer in 20 days.

As alternative relief, D-Link moved the Court to transfer this case under 28 U.S.C. § 1404(a) to New York, where the *PowerDsine* litigation was pending. The vast bulk of D-Link's arguments centered around the pending *PowerDsine* litigation. During the briefing on the motions, the *PowerDsine* case settled. D-Link still sought transfer to New York and only briefly discussed the impact of the *PowerDsine* settlement on this case.[2] The parties briefly argued the transfer motion at the February 7 hearing, and the focus of their argument was the extent of PowerDsine chips' importance in this litigation. *See* Transcript, pp. 7:14–10:17, Docket No. 61.[3] After hearing these arguments, the Court denied D-Link's motions to transfer.

## APPLICABLE LAW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first determination to be made under 28 U.S.C. § 1404(a) is whether the

---

[2] In its reply to its third motion, D-Link stated, "Network-1 is quite mistaken. Its interesting settlement of the *PowerDsine v. Network-1* case has no impact on the venue transfer factors." Reply, pp. 2–3, Docket No. 44. After the word "case" in the previous sentence, D-Link had the following footnote:

> Pursuant to the settlement agreement, Network-1 agreed not to sue any of PowerDsine's customers until April 1, 2006, *except* D-Link Corp. and D-Link Systems, PowerDsine [sic] and promised not to "assist or cooperate" in any litigation. Because PowerDsine's PoE [power over ethernet] chip is the industry standard product, the settlement protects all sellers of PoE products except D-Link Systems.

[3] Discussion of the affect of the *PowerDsine* settlement on potential witnesses in this litigation is transcribed at 6:17-7:13.

claim could have been filed in the judicial district to which transfer is sought. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). If so, under § 1404(a), a court examines "the convenience of the parties and witnesses." *Id.* The convenience determination involves examining several private and public interest factors, none of which are given dispositive weight. *Id.*

The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of the compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive. *Id.* The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict of law problems involving foreign law's application. *Id.*

A court should also consider the plaintiff's forum choice, but the plaintiff's forum choice by itself is not conclusive or determinative. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003). *But see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 828 (5th Cir. 1986) ("Once the Court has determined that an adequate, available forum exists, the next step is to proceed to a balancing of the public and private interest factors, bearing always in mind that 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'") (quoting *Gulf Oil*, 330 U.S. at 508). A court must consider these factors in light of all the claims alleged in the case and not restrict its analysis to only the plaintiff's claims. *In re Volkswagen AG*, 371 F.3d at 204. The movant bears the burden of proof in demonstrating that transfer is warranted.

*Z-Tel Commc'ns*, 331 F. Supp. 2d at 570 (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)).

## ANALYSIS

In ruling on a motion to transfer under § 1404(a), the first consideration is whether the claim could have been filed in the judicial district to which transfer is sought. *In re Volkswagen AG*, 371 F.3d at 203. Venue in a patent case is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Thus, the patent venue statute is much more expansive than the general venue statute[4] and gives a plaintiff broader discretion in where the plaintiff chooses to bring the suit. *Compare* 28 U.S.C. § 1400(b) *with* 28 U.S.C. § 1391(b). Network-1 does not dispute that it could have brought this suit in the Southern District of New York, and the Court sees no reason this case could not have been brought in the Southern District of New York. Thus, the Court will determine whether this case should be transferred to the Southern District of New York for the "the convenience of the parties and witnesses." *See In re Volkswagen AG*, 371 F.3d at 203.

**Private Interest Factors**

*Relative ease of access to sources of proof*

D-Link contends that all technical documents are located in New York. D-Link admits that documents can be exchanged electronically but insists that the original documents will still require

---

[4] 28 U.S.C. § 1391(b) provides for venue in a federal-question case:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

inspection. D-Link also contends that inspection of the prototypes, which are in New York, will be necessary. Network-1's headquarters are in New York but maintains that the most relevant documents are most likely located in California or Taiwan, where D-Link designs and manufactures the allegedly infringing products.

This factor does not support transfer. As D-Link admits, the documents can (and will likely) be exchanged electronically. Unless the parties manage to schedule a document inspection or prototype inspection at the same time a hearing is scheduled in the case,[5] D-Link will not be less inconvenienced in traveling to New York than to Texas for this purpose.

*Availability of the compulsory process to secure witnesses' attendance*

D-Link argues that the *PowerDsine* settlement agreement prohibits PowerDsine from assisting D-Link in this litigation. Thus, D-Link will need to resort to compulsory process to procure witnesses and documents from PowerDsine. D-Link contends that PowerDsine's assistance will be vital in defending this suit since PowerDsine manufactures chips that are necessary to the infringement analysis. Network-1 disagrees as to PowerDsine's importance. According to Network-1, most of D-Link's accused products do not use PowerDsine chips, which greatly lessens PowerDsine's necessity to this litigation.

According to Network-1, PowerDsine is a wholly-owned subsidiary of an Israeli corporation and all of the key witnesses from PowerDsine, if they are needed at all, live and work in Israel. To the extent D-Link will need PowerDsine's American employees to testify at trial, this factor favors transfer, but as to PowerDsine's Israeli employees it is neutral.

---

[5] Such a coordination of dates is highly unlikely since the most likely reason to appear before the court before the *Markman* hearing is a discovery dispute, which is unlikely to occur until after the documents are exchanged.

*Willing witnesses' cost of attendance*

D-Link argues that this is the most important factor and greater weight should be given to the convenience of non-party witnesses. According to D-Link, most of the non-party witnesses are located in either Connecticut or New York, including the inventors, the inventors' employer, the attorney who prosecuted the patent, the chip manufacturer (PowerDsine), and the two inventors listed on the provisional application. D-Link contends no witnesses are located in Texas. Thus, it would be much more inconvenient and expensive for the witnesses to travel to Texas than to New York.

Network-1 responds that D-Link Corporation is a Taiwanese entity and D-Link Systems is located in California. Texas is significantly closer than New York to both Taiwan and California. Network-1 also argues that any PowerDsine employees who testify will likely come from Israel not New York.

For those witnesses coming from New York or Connecticut, New York is a more convenient forum than Texas. For all other witnesses, such as those from California, Taiwan, or Israel, Texas is at least as, if not more, convenient. Accordingly, this factor is neutral.

*All other practical problems that make the case's trial easy, expeditious, and inexpensive*

Network-1 argues that transferring this case will significantly delay its resolution. Specifically, Network-1 argues that the Court's Patent Rules,[6] Docket Control Order, and Discovery Order require prompt and full disclosure of information that makes a very cumbersome patent case

---

[6] The Court adopted the Patent Rules into its Docket Control Order several years ago. The Court's Patent Rules were modeled after those successfully used in the Northern District of California, which has been at the forefront of patent litigation for many years. Recently, by General Order, all of the judges of the Eastern District adopted the Patent Rules and incorporated them into the Local Rules as Appendix M. A copy of the Patent Rules is located at the Eastern District's website: http://www.txed.uscourts.gov/Rules/LocalRules/LocalRules.htm.

proceed much more expeditiously. Network-1 represents that the Southern District of New York lacks similar rules. Given the districts' respective caseloads, Network-1 argues that transfer would delay the case by up to one year. D-Link contends that if this case is transferred it will likely be given priority in New York since it is related to the *PowerDsine* case. However, since the *PowerDsine* case has settled, D-Link's argument is moot. As Network-1 notes, this Court's Patent Rules, which are district-wide local rules, and this Court's Docket Control Order and Discovery Order are designed to manage patent cases swiftly and efficiently. This case has already been delayed six months as D-Link contested service of process and pursued JPML consolidation. Six months later this case is now finally underway with a firm trial setting in March 2007 and a *Markman* hearing in six months. This factor does not support transfer.

**Public Interest Factors**

*Administrative difficulties flowing from court congestion*

D-Link does not address this consideration. Network-1 does not directly address this factor but does argue that this district's historically fast-paced docket favors retaining the case.

This factor does not support transfer. This Court typically sets patent cases for trial 15-18 months from the scheduling conference. Accordingly, this Court is rarely beset with issues of congestion. This case is already underway and set for a *Markman* hearing on September 19, 2006 and trial on March 12, 2007.

*Local interest in having local issues decided at home*

D-Link argues that Texas has no interest in this litigation while New York has a great interest in this litigation since some of the parties, the inventors, and the chip manufacturer are there. Network-1 responds that the Eastern District has a specific interest in this case since infringing

8

products are sold within the district.

It is clear that New York has an interest in this litigation, but Texas also has an interest in this litigation. Allegedly infringing products are sold to residents of the Eastern District of Texas, just as they are sold to New York residents, and potential acts of infringement affect the residents of both states. Those residents have an interest in upholding the patent laws and accordingly have an interest in this litigation. Plano's technology sector, located in the Eastern District of Texas, further heightens this interest within the district. Thus, this factor is neutral at best and does not support transfer.

### *Forum's familiarity with the governing law*

D-Link does not address this consideration. Network-1 argues that this factor should be given increasing weight in cases involving specialized areas of law, such as patent cases. Network-1 contends that the courts in the Eastern District have vast experience in patent cases given the volume of intellectual property cases filed here.

This Court has the utmost respect for the Southern District of New York and is certain the judges in that district are quite capable of hearing this case, if it is transferred. However, this Court does have extensive experience with patent litigation. As already discussed, this Court has adopted special rules and procedures to efficiently manage these cases, allowing it to move patent cases to a relatively prompt and efficient resolution. Therefore, this factor does not support transfer.

### *Avoidance of unnecessary conflict of law problems involving foreign law's application*

Neither side raises any conflict-of-law issues. Since this case will involve the application of federal law, this factor is inapplicable.

**Balancing the Factors**

D-Link's behavior related to its motions to dismiss calls into question its motivation for transfer. For five months, and in three motions, D-Link sought dismissal for insufficiency of process. D-Link's position placed significant expense and delay on litigation that had hardly even begun. Then at the motion hearing, without any prodding and to the surprise of all, D-Link said it would have waived service but had never been asked to do so. With its sudden offer to waive service, D-Link then expected an additional three months to answer as provided in Rule 4. Such delay tactics and gamesmanship call into question D-Link's true basis for seeking transfer—is it for convenience or for delay?

Network-1 chose to file this case in this forum. While the plaintiff's forum choice is not conclusive or determinative, it should be considered. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003). D-Link seems to argue that the Court should not give any deference to Network-1's forum choice, but instead should defer to PowerDsine's choice of forum, even though it is not a party to this lawsuit and its case against Network-1 in New York has been dismissed. The forum choice of PowerDsine, who is not a party to this action, has no bearing. Even while the *PowerDsine* case was ongoing, D-Link made no arguments that the first-to-file rule applied. Had the *PowerDsine* case not settled, the Court likely would have transferred the case under its own precedent. *See, e.g., Zoltar Satellite Sys. v. LG Elecs. Mobile Commc'ns Co.*, 402 F. Supp. 2d 731 (E.D. Tex. 2005) (Davis, J.) (transferring a patent-infringement case to the Northern District of California where a related case involving three of the same patents was pending); *Logan v. Hormel Foods Corp.*, Cause No. 6:04-CV-211, Docket No. 25, August 25, 2004 (Davis, J.) (transferring a patent-infringement case to the docket of a judge who had already construed the patent claims at issue and examined the

patent's voluminous file history).

Although D-Link's original basis for transfer to the Southern District of New York—the *PowerDsine* case—has disappeared, New York could be a more convenient forum for those witnesses who live or work in New York or Connecticut. However, this case will likely involve many more witnesses than just those from the New York area, and their convenience must be considered as well. The D-Link entities are located in Taiwan and California. Unlike a personal-injury case, a patent case typically involves gathering witnesses, documents, and experts from all over the country, and often the world. Texas is centrally located in the United States and is suitably placed to be convenient for witnesses throughout the country. Furthermore, the Tyler Division is only 90 miles from DFW Airport, a major national and international hub.[7]

It is true that courts in the Southern District of New York will likely have subpoena power over witnesses in the New York area. D-Link argues this is especially important since through the *PowerDsine* settlement Network-1 has prohibited PowerDsine from assisting D-Link in this litigation. However, D-Link has not rebutted Network-1's contention that the majority of D-Link's accused products do not even use PowerDsine chips. Whether or not this Court has subpoena power over unwilling witnesses is only relevant for trial. The parties can procure deposition and document subpoenas through any court within 100 miles of the witness. In the instance where this Court cannot compel an unwilling witness to testify at trial, neither side is prevented from using that witness's video deposition during the trial. Further, to the extent Network-1 has control over unwilling PowerDsine employees, this Court has compelling equitable means of securing their

---

[7] Tyler also has a local airport that provides daily flights to and from DFW and Intercontinental Airport in Houston, another major national and international hub.

attendance, which it will not hesitate to utilize if Network-1 tries to play games with D-Link's efforts at securing discovery.

D-Link also argues that New York is a more appropriate venue because the inventors and the prosecuting attorney reside in the New York or Connecticut areas. The extension of the argument that venue should be based on the location of the inventors or prosecuting attorney would require that any suit involving the '930 patent be filed in New York. This is illogical since the patent venue statute does not limit venue to the districts where the inventors or prosecuting attorneys reside and is contrary to Congressional intent. Rather, the statute anticipates that there are many appropriate venues in a patent case. *See* 28 U.S.C. § 1400(b).

Patent litigation is quite different from personal-injury or products-liability cases. The venue statutes recognize this and allow for venue either where the defendant resides or where the defendant has committed acts of infringement and has a regular and established place of business. *Compare* 28 U.S.C. § 1400(b) *with* § 1391(b). A personal-injury case is strongly linked to the place where the injury occurred. Witnesses who saw the injury occur and witnesses who responded to the injury are crucial to such cases. *See, e.g., Davis v. G.I. Trucking Co.*, Cause No. 2:04-CV-361, Docket No. 17, February 22, 2005 (Davis, J.) (transferring a personal-injury case to the district where the accident occurred); *Purdy v. Munden*, 356 F. Supp. 2d 658 (E.D. Tex. 2005) (transferring a negligence personal-injury case to the district where the accident occurred). Products-liability cases are less linked to the place where the injury occurred, but witnesses who saw the injury may likely be needed to address issues of contributory negligence, and witnesses where the product was manufactured or designed may be needed to prove the product defect. The places of manufacture or design and injury may be located across the country from one another. *See, e.g., Watson v. Hyundai Motor Co.*, Cause

No. 2:04-CV-374, Docket No. 25, (Davis, J.) (noting that Court granted the motion to transfer in this products-liability case to the place where the accident occurred).

Witnesses in patent cases are typically more dispersed. There are the inventors who created the patented invention and the attorneys who prosecuted the patent application, who may or may not have ties to the plaintiff. The inventors and designers of the defendant's accused products are also important. Of immense importance, and usually unknown at the beginning of the case, are witnesses with personal knowledge of relevant prior art. Such witnesses are usually not affiliated with either party and have the possible power of proving the plaintiff's patent invalid. There are witnesses relating to sale and distribution of the accused products, which are relevant to damages. Typically, witnesses in patent cases are scattered throughout the country, if not the world. Thus, the importance of witnesses' cost and distance of travel is diluted since, regardless of where the trial is held, it is nearly certain that many witnesses, including third-party witnesses, will need to travel a significant distance.

Documents, prototypes, and witnesses are typically located throughout the country and the world in patent cases. Thus, no forum can be convenient for everyone. This reality and the importance of the public interest considerations give the public interest factors greater weight in deciding a motion to transfer "[f]or the convenience of parties and witnesses, in the interest of justice." The Court is not persuaded by D-Link's arguments, which are undermined by D-Link's prior actions in this case regarding service of process that speak more to a delay tactic than an interest in efficiently litigating this action.

This case has been ongoing since August 2005 and is currently scheduled for a *Markman* hearing on September 19, 2006 and for trial in March 2007, less than a year from now. Transfer of

13

this case at this juncture would likely extend the time it takes the case to reach trial. *See Walter Oil & Gas Corp.*, 270 F. Supp. 2d at 861 ("Most importantly to this Court, this case has a firm trial setting on September 15, 2003. A transfer at this juncture would severely prejudice Walter and unduly delay the resolution of its claims."). In some instances, transfer can speed the efficient resolution of a patent case, but that is not the case here. *See, e.g., Zoltar Satellite Sys.*, 402 F. Supp. 2d at 731 (transferring a patent-infringement case to the Northern District of California where a related case involving three of the same patents was pending); *Logan*, Cause No. 6:04-CV-211, Docket No. 25, August 25, 2004 (transferring a patent-infringement case to the docket of a judge who had already construed the patent claims and examined its voluminous file history).

Weighing all of these considerations including the convenience of the inventors and prosecuting attorney, the role PowerDsine will likely play in this case, the stage of the case and the past delay, the firm *Markman* and trial dates, and the convenience of third-party prior art witnesses, the Court is unconvinced that D-Link has shown transfer under § 1404(a) is warranted for the "[f]or the convenience of parties and witnesses, in the interest of justice."

## CONCLUSION

For these reasons, the Court denied D-Link's motions to transfer venue at the February 7 hearing.

**So ORDERED and SIGNED this 23rd day of March, 2006.**



LEONARD DAVIS
UNITED STATES DISTRICT JUDGE